**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CLIFFORD CROSS,**

    **Plaintiff,**

vs.                                                                                          Civ. No. 07-212 MV/ACT

**CITY OF LAS VEGAS, NM;
COUNTY OF SAN MIGUEL;
RICHARD JOHNSON; ROY PACHECO;
EDDIE TRUJILLO; EUGENIO MATHIS;
and MATTHEW SANDOVAL,**

    **Defendants.**

**MEMORANDUM OPINION and ORDER**

This matter comes before the Court on a Motion to Dismiss, or in the Alternative, a Motion for More Definite Statement, filed by the City of Las Vegas, Richard Johnson, Roy Pacheco, Eddie Trujillo, and Matthew Sandoval ("the City Defendants") (Doc. 15); and on the Honorable Eugenio Mathis's two Motions to Dismiss (Docs. 20 & 33). All motions are brought under FED. R. CIV. P. 12(b). Because Plaintiff Clifford Cross has not stated a claim on which relief may be granted against these Defendants, the Court will dismiss his claims, but will allow Cross an opportunity to amend his complaint.

**APPLICABLE LEGAL STANDARDS**

Because Cross is proceeding *in forma pauperis*, the Court "shall dismiss" the case "at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *see Curley v. Perry*, 246 F.3d 1278, 1283-84 (10th Cir. 2001).

In deciding a motion to dismiss for failure to state a claim, the Court applies the following standard:

> [A]ll well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  It is true that dismissal under Rule 12(b)(6) is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.  It is also well established that dismissal of a complaint is proper only if it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.

*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (internal quotation marks and citations omitted); *Curley*, 246 F.3d at 1281 (holding that court dismissing case for failure to state a claim under 28 U.S.C. § 1915(e)(2) "must accept the allegations of the complaint as true and view them in the light most favorable to the plaintiff").  The Defendants bear the burden of showing that, viewing the well-pleaded factual allegations in Cross's complaint as true and in the light most favorable to him, he has not alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, ___ U.S.___, 127 S. Ct. 1955, 1974  (2007); *MacArthur v. San Juan County*, ___ F.3d ___, 2007 WL 2045456, *5 (10th Cir. 2007) (discussing rule 12(b)(6) standard).

Further, in reviewing a pro se complaint, a court applies the same legal standards applicable to pleadings counsel has drafted, but is mindful that the complaint must be liberally construed.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "The broad reading of the plaintiff's complaint [, however,] does not relieve the plaintiff of alleging sufficient facts on which a recognized legal claim could be based."  *Id.*

> [T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint.  Nevertheless, conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted.  Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his

    conclusory allegations.

*Id.* (citations omitted). "[T]he trial court is under no obligation to become an 'advocate' for or to assist and guide the pro se layman through the trial thicket." *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977).

    The Defendants contend that the Court does not have jurisdiction to grant most of the relief Cross requests because he seeks vacation of state-court judgments. In *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229 (10th Cir. 2006), the Tenth Circuit Court of Appeals discussed the *Rooker-Feldman* doctrine and its impact on federal courts' jurisdiction over state-court suits. The Tenth Circuit stated:

> The *Rooker-Feldman* doctrine. . . arises by negative inference from 28 U.S.C. § 1257(a), which allows parties to state court judgments to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts. *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004). *Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims "actually decided by a state court" and claims "'inextricably intertwined' with a prior state-court judgment." *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (citing *Rooker*, 263 U.S. at 415-16, 44 S.Ct. 149, and *Feldman*, 460 U.S. at 483 n.16, 103 S.Ct. 1303).
>
> The operation of *Rooker-Feldman* is best demonstrated by the two cases that give the doctrine its name. In *Rooker*, the federal-court plaintiffs alleged that the judgment of an Indiana circuit court, to which they were parties, had caused them injury by enforcing a state statute in violation of the Contracts Clause and due process protections of the United States Constitution. *Rooker*, 263 U.S. at 414-15, 44 S.Ct. 149. In federal court they sought relief "in equity to have [the] judgment . . . declared null and void." *Id.* at 414, 44 S.Ct. 149. The Supreme Court held that because "[t]he jurisdiction possessed by the District Courts is strictly original," not appellate, the district court lacked jurisdiction over the claim, which was "indubitably . . . merely an attempt to get rid of the judgment for alleged errors of law." *Id.* at 416, 44 S.Ct. 149.

*Mo's Express, LLC*, 441 F.3d at 1233-34. "The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Thus, when deciding whether to apply the *Rooker-Feldman* doctrine in a particular case, a court must pay "close attention to the relief sought" in the federal suit. *Mo's Express, LLC*, 441 F.3d at 1237 (internal quotation marks omitted). The *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction to grant relief whenever the requested relief "would necessarily undo" the state court's judgment, as in when the relief granted would place the plaintiff "back in the position" he occupied prior to the state court's ruling. *Id.* (internal quotation marks omitted). Federal courts lack jurisdiction to review, reverse, or grant relief from state-court judgments, even if those judgments were allegedly the result of a constitutional violation. *See Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1149 (10th Cir. 2004); *Calvert v. Safranek*, Nos. 06-1051, 06-1123, 2006 WL 3735508 at *1 (10th Cir. Dec. 20, 2006) (affirming, under *Rooker-Feldman* doctrine, the district court's dismissal of case against judge and prosecuting attorneys in part because the plaintiff sought as a remedy the abrogation of a state-court judgment).

## II. ALLEGATIONS IN THE COMPLAINT

Cross's federal complaint is entitled as one to "Vacate Void Judgments." Compl. at 1. Cross, also known as "Karoniaktatie, Pine Tree Chief of the Mohawk Nation," contends that he is a "citizen of the Mohawk Nation" and "is not a citizen of New Mexico or the United States of America." Compl. at 2, 6. He resides in a motor home, which he asserts is a "mobile embassy for the service of other Mohawk and Iroquois citizens." *Id.* In 2005, Cross refused to license the motor home, choosing instead to append a "plate marked Mohawk nation as well as a placard describing the home and Mobile Embassy as a diplomatic vehicle of the Six Nation Iroquois Confederacy." *Id.* at 4.

On August 29, 2005, Defendant Officer Richard Johnson, a police officer for the City of Las Vegas, stopped Cross in Las Vegas because Cross did not have a license plate on the motor home. *Id.* at 3-4. Johnson asked Cross for proof of registration and insurance. *Id.* Cross informed Johnson of Cross's opinion that he did not have to register or insure the motor home because neither "the Mohawk Nation nor the Six Nation Iroquois Confederacy required their citizens to register or insure their vehicles." *Id.* at 4. Johnson radioed fellow officer Defendant Roy Pacheco for assistance, and the officers decided to arrest Cross after further questioning and Cross's failure to present registration, licensing, or proof of insurance. *See id.* Cross then informed the two officers that, because he was a Mohawk chief, he was a "consulate" and enjoyed diplomatic immunity, but the officers handcuffed him and transported him to the city jail. *See id.* at 4-5. Cross was placed in a cell that he contends was "infested with urine and feces," but was transferred to "another cell without a toilet after being subjected to a cavity strip search." *Id.* at 5. His motor home was impounded. *See id.*

Cross paid bail, and was given notice of a "non-attorney trial" on the traffic charges, to be held on November 1, 2005, before municipal-court judge Defendant Eddie Trujillo. *Id.* After discussing the matter with City Attorney Defendant Matthew Sandoval, Trujillo "continue[d] the matter" to November 17, 2005. *Id.* at 6. Sandoval entered his appearance on behalf of the City. *See id.* At the November 17 hearing, Johnson appeared as a witness for the City, and Cross argued that the municipal court had no jurisdiction over him because Cross was protected by the Jay Treaty and the Treaty of Ghent, which, according to Cross, allow "right of passage" by Indians without interference. *Id.* at 7. Trujillo ruled in favor of the City on the traffic citations, and Cross appealed to the Fourth Judicial District Court of the State of New Mexico. *See id.* at 7-8.

Defendant Judge Eugenio Mathis presided over the January 12, 2006 hearing in state court,

5

which the court designated as an "appeal de novo." *Id*. at 8. Judge Mathis listened to Cross's arguments that Cross, as a non-citizen "consul," enjoyed "the rights and privileges of any diplomat and did not come under any state or local government jurisdiction by virtue of the Jay Treaty, the Treaty of Ghent," and that Cross, therefore, did not have to obey any laws or constitutions of "inferior states" that dealt with his "right of passage." *Id.* at 8-9. Judge Mathis, too, ruled in favor of the City and upheld Cross's convictions. Judge Mathis contends, and Cross does not dispute, that Cross did not appeal his convictions to the New Mexico Court of Appeals. *See* Mathis's Mot. To Dismiss at 1-2.

In his federal complaint, Cross complains that Judge Mathis "refuse[d] to dismiss the illegal actions of the Municipal Court 'ie' Eddie Trujillo." Compl. at 9. He further contends that Judge Mathis "ignored Due Process by not dismissing the matter for acting under color of law outside of jurisdiction by Richard Johnson," and that Judge Mathis denied Cross "assistance of council" [sic] in violation of the Sixth Amendment. *Id.* at 10.

Cross seeks "vacation of the judgments and garnishment" in the municipal and state district-court cases; "returning all that has been taken" from him; "ending trespass to the Home, and Mobile Embassy of Clifford Cross;" and compensatory damages for trespass, "emotional, mental and physical dehumanization, stress, and moral turpitude." *Id.*

### III. ANALYSIS

**A. The Court has no jurisdiction to vacate the state-court judgment.**

Cross is a party in both the state and municipal cases in which he seeks to have judgments vacated, so he is subject to the *Rooker-Feldman* doctrine. *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (noting that the *Rooker-Feldman* doctrine precludes "a *party* losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United

States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights" and holding that the doctrine did not apply to a plaintiff who was not a party in the underlying state-court suit) (emphasis added); *Mo's Express, LLC*, 441 F.3d at 1237 (reversing district court's dismissal of case under *Rooker-Feldman* for plaintiffs who were not parties in the underlying state-court action). Cross filed his federal complaint to vacate the judgments after he lost in the municipal and state-court proceedings. Cross specifically asks this Court to vacate both judgments and to place him back into his pre-judgment position by declaring that the municipal and state-court judgments are void for lack of jurisdiction and that the officers were trespassing when they impounded his vehicle. Under the *Rooker-Feldman* doctrine, the Court has no jurisdiction to grant such relief, so the claims for violation of his constitutional rights and for trespass must be dismissed. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *Crutchfield v. Countrywide Home Loans*, 389 F.3d at 1149. Cross's remedy for what he perceives as a violation of Indian treaties was to appeal the decision of the Fourth Judicial District Court to the New Mexico Court of Appeals, and then to the New Mexico Supreme Court, and finally, to the United States Supreme Court. *See* 28 U.S.C. § 1257(a); *Rooker*, 263 U.S. at 416.

**B. The judges are absolutely immune from suit.**

Insofar as Cross may be alleging violation of his due-process rights by Judge Mathis or Judge Trujillo, it is well established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359.

As the Supreme Court of the United States explained over 130 years ago, absolute immunity

7

is granted for judicial acts because

> it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.  Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.
>
> . . . .
>
> Controversies involving not merely great pecuniary interests, but the liberty and character of the parties, and consequently exciting the deepest feelings, are being constantly determined in those courts, in which there is great conflict in the evidence and great doubt as to the law which should govern their decision.  It is this class of cases which impose upon the judge the severest labor, and often create in his mind a painful sense of responsibility.  Yet it is precisely in this class of cases that the losing party feels most keenly the decision against him, and most readily accepts anything but the soundness of the decision in explanation of the action of the judge. Just in proportion to the strength of his convictions of the correctness of his own view of the case is he apt to complain of the judgment against him, and from complaints of the judgment to pass to the ascription of improper motives to the judge. When the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the disappointment occasioned by an adverse decision, often finds vent in imputations of this character, and from the imperfection of human nature this is hardly a subject of wonder. If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away.  Few persons sufficiently irritated to institute an action against a judge for his judicial acts would hesitate to ascribe any character to the acts which would be essential to the maintenance of the action.
>
>   If upon such allegations a judge could be compelled to answer in a civil action for his judicial acts, not only would his office be degraded and his usefulness destroyed, but he would be subjected for his protection to the necessity of preserving a complete record of all the evidence produced before him in every litigated case, and of the authorities cited and arguments presented, in order that he might be able to show to the judge before whom he might be summoned by the losing party-and that judge perhaps one of an inferior jurisdiction-that he had decided as he did with judicial integrity; and the second judge would be subjected to a similar burden, as he in his turn might also be held amenable by the losing party.

*Bradley v. Fisher*, 80 U.S. 335, 347-49 (1871).  Since *Bradley*, the Supreme Court has continued to emphasize that a judge's immunity from civil liability "is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (citations omitted).  Although Cross contends that he is not subject to the laws of New Mexico and the municipal court had no jurisdiction over him, his claims are based on a defense of diplomatic immunity.  Clearly, the municipal court had jurisdiction to rule on traffic citations, and its actions, therefore, would not be taken "in the complete absence of all jurisdiction." *Id.*  And Cross himself invoked the jurisdiction of the Fourth Judicial District Court by appealing from the municipal-court convictions.

The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights." *Pierson v. Ray*, 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Under *Bradley*, *Mireles*, and *Stump*, Judges Trujillo and Mathis are absolutely immune from suit, and the Court will dismiss Cross's claims against them.

### C.  Sandoval is absolutely immune from suit.

Defendant Sandoval is also absolutely immune from suit for any acts associated with his prosecutorial functions.  "[I]n initiating a prosecution and in presenting the [City's] case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  Cross's sparse allegations against Defendant Sandoval involve Sandoval's decision to prosecute the traffic charge against Cross.  Sandoval is, therefore, absolutely immune

from suit for claims associated with these acts and claims against him must be dismissed. *See Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007).

**D. Suit against the officers is barred until Cross's convictions are overturned by the state courts.**

Cross's claims against Officers Johnson and Pacheco for "false arrest and false imprisonment," Compl. at 5, also must be dismissed. Whether the claims are couched in terms of state-law claims for false arrest/imprisonment or trespass or as one under 28 U.S.C. § 1983 for damages for violation of his constitutional right to be free from warrantless arrests and seizures of property unsupported by probable cause[1], a ruling or judgment in Cross's favor "would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999). Because Cross has been convicted in district court for the acts for which he was arrested, probable cause for his arrest and the reasonableness of the motor home's seizure is conclusively established and precludes a subsequent civil action until the conviction is overturned or invalidated in state court. *See Beck*, 195 F.3d at 556-57; *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) ("[W]hen a [person convicted of a crime in state court] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."). Because of the nature of Cross's allegations, his complaint for declaratory relief and damages necessarily implies the invalidity of

---

[1] *See, e.g., Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (noting that the Fourth Amendment protects against unreasonable seizures of property in case in which plaintiff alleged officers improperly seized her three horses without probable cause).

his state-court convictions, and because he has not shown that the convictions have been invalidated in state court, his claims for false arrest, false imprisonment, trespass, and/or for violation of § 1983 must be dismissed.

### E.  Cross has not stated a claim against the City of Las Vegas or San Miguel County.

The only allegations that are left that could possibly support a viable federal action if they were further expanded upon are that Cross was "jailed . . . under horrendous inhuman conditions in a cell infested with urine and feces."  Compl. at 5.  But "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, --- F.3d ----, 2007 WL 1895877, * 3 (10th Cir. July 3, 2007).  Here, the complaint does not state who placed Cross in the particular jail cell, how long he stayed there, whether he was harmed or came into contact with urine and feces, and what right Cross believes the unknown defendant violated.  The City has requested a more definite statement under Rule 8 of the Federal Rules of Civil Procedure.

Further, Cross has stated no facts to support any claim against the County.  The Court will give Cross an opportunity to amend his complaint to develop a claim regarding these sparse facts. *See id.*; *Hall*, 935 F.2d at 1110.

**IT IS ORDERED** that the City Defendants' Motion to Dismiss, or Alternatively, Motion for a More Definite Statement (Doc. 15), and Mathis' two Motions to Dismiss (Docs. 20 & 33) are GRANTED;

**IT IS FURTHER ORDERED** that Cross's claims for declaratory relief and for damages from the current Defendants for violation of constitutional rights, false arrest, false imprisonment, and trespass are DISMISSED;

**IT IS FURTHER ORDERED** that Cross shall file an amended complaint within ten days

of the filing of this order, or his complaint will be dismissed.

**Dated this 27th day of September, 2007.**

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

Clifford Cross, *pro se*

Attorneys for Defendants the City of Las Vegas,
Richard Johnson, Roy Pacheco, Eddie Trujillo, and
Matthew Sandoval:

Scheuer, Yost & Patterson, P.C.
Tony F. Ortiz, Esq.

Attorneys for Defendant Eugenio Mathis:

Civerolo, Gralow, Hill & Curtis
Robert J. Curtis
Edward F. Messett